1   Your Name: Jane Doe
2   Email Address: JaneDoeLawsuit24@gmail.com
    Mailing Address: 2726 Martin Luther King Jr. Way Berkeley CA 94703
3   Phone Number::

4
5                          UNITED STATES COURT

6                     NORTHERN DISTRICT OF CALIFORNIA

7                                          Case No.: Number
8
9                                          CV26.02030
10          Jane Doe                       EX-PARTE MOTION FOR TRO AND PRELIMINARY
                                           INJUNCTION   To stop seizure
11                                         of my home on March 11, 2026
12
13
14
15
16          Plaintiff(s)
17   vs.
18
19                                                FILED
20          City of Berkeley
            Thomas Gregory                       MAR 10 2026
21
22                                         CLERK, U.S. DISTRICT COURT
                                           NORTHERN DISTRICT OF CALIFORNIA
23
24
25
26          Defendant ( s)
27
28

**Motion In A Nutshell (***After Writing Lawsuit Completely, tell the judge what you want***

***them to do in a nutshell. Add additional pages if needed)***

    THIS   MOTION   SEEKS   TO   ENJOIN   THE
WARRANTLESS   SEIZURE   OF   MY   VEHICULAR
HOME   ON   MARCH   11th, 2026   FROM   8th   and   HARRISON
STREET — LEAVING   ME   AS   A   SINGLE   WOMAN

EX-PARTE MOTION FOR TRO AND PRELIMINARY INJUNCTION - 1

Destitute, with NO shelter on the street,
I will Have Nowhere to keep clothes,
medication, bedding, and a safe place to sleep.
I wont be able to keep my Job & I
dont Have a place to sleep. The
City of Berkeley is Indifferent — I
Have asked for Help Moving out of
the abatement zone at 8th and Harrison —
But Thomas Gregory Rejected this and only giving
me until March 11, 2026 — which I cannot do
Because I am disabled and unable to get
everything together to move in time.

## Standard of Review For TRO and Preliminary Injunction

*1.* A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without

notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that

immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be

heard in opposition." Fed. R. Civ. P. 65(b)(1)(A)." Quoting from *Sacramento Homeless Union et al v City*

*of Sacramento et al* 2:22-cv-01095-TLN-KJN Dkt. No. 39 *(*August 3rd 2023 Order GRANTING TRO). To

obtain a preliminary injunction, the plaintiff has the burden to "establish [1] that he is likely to succeed on

the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Under the sliding-scale approach adopted by the Ninth Circuit in

Alliance for the *Wild Rockies v. Cottrell*, 632 F.3d 1127, Courts must weigh these factors using a "sliding

scale" approach such that where there are "serious questions going to the merits," a preliminary injunction may still be issued so long as "the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## **FRCP 65B(b) Notice *(You must attempt to notify the opposing counsel about your motion before you file it, and serve them a copy of the motion. If you are unable to, explain why)***

1. ON MARCH 9th I DIRECTED MY COMPANION to NOTIFY the CITY of this eX-PARTE motion, THEY NOTIFIED the CITY, [SEE DEC KieWieDeJonge]

## **Likelihood of Success on The Merits**

## 42 USC §1983 Fourth Amendment Unreasonable Seizure

1. *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D. Cal. 2011) the Ninth Circuit held that homeless peoples "have a legitimate expectation of privacy in their property," the district court further held that "[t]he property of the homeless is entitled to Fourth Amendment protection." Lavan also found that homeless people whose property is seized are entitled to 90 days of storage under Cal Civ Code 2080-2080.10 holding that summary destruction of momentarily unattended property needed to be stored because "California Civil Code § 2080, which requires that " any person or public entity or private entity that finds and takes possession of any ... personal property" must make a reasonable effort to return it or turn it over to the police, who must notify the owner and hold it for at least 90 days, see Cal. Civ.Code § 2080; Candid Enters. Inc. v. Grossmont Union High Sch. Dist., 39 Cal.3d 878, 885, 218 Cal.Rptr. 303, 705

P.2d 876 (1985) (" if otherwise valid local legislation conflicts with state law, it is preempted by such law and is void" ) *id. (add additional pages as needed)*

1. THomaS GReGoRy INDIcated that WiLL toW MY HoMe Without a WaRRant. [Decl. Doe Decl Kiewiet de Jonge]

2. MY HoMe is legally PaRKeD, Not blocking tRaffic. Noth A Health HaZaRD [Decl Doe complaint]

2. _____

# 42 USC § 1983 Violation of Fourteenth Amendment State Created Dangers Doctrine.

1. I reincorporate the preceding paragraphs as if fully set forth herein.

2. Under the holding of *Kennedy v. City of Ridgefield*, 439 E 3d 1055 (9th Cir. 2006), the Ninth Circuit recognizes liability under substantive due process where a state or local official act to place a person in a situation of known danger with deliberate indifference to their physical safety." To prove a cause of action of under the State Created Danger Doctrine, a Plaintiff must prove (1) "the officers' affirmative actions created or exposed h[im] to actual, particularized danger that []he would not otherwise have faced"; (2) "the injury was foreseeable"; and (3) "the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The third element, deliberate indifference, requires "proof that a municipal actor disregarded a known or obvious consequence of his action" which is "a stringent standard of fault." Id. at 1274 (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974.

3. If I lose my home I will have nowhere to sleep, I will get hypothermia.

4. I won't having a locking door, if ~~from~~ I lose my van, I may be sexually assaulted or robbed as a single woman.

City has given nothing to mitigate the danger!

5. No shelter available because they dont accept my work schedule — I need to keep my job.

## Violation of Title II Americans With Disabilities Act

1. Under Title II of the ADA, public entities may not adopt laws, policies, or practices that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R.§ 35.130(b)(3), (8); *see also* 28 C.F.R. § 35.150(a) (a public entity must "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by, people with disabilities."). A regulation discriminates under the ADA when "its enforcement burdens [the disabled] in a manner different and greater than it burdens others." *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 959-60 (N.D. Cal. 2020) (citing and quoting from *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)). Where a regulation so burdens disabled people, the plaintiff need not show that the public entity intentionally discriminated on the basis of disability. *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) ("Congress could not have intended to limit the [ADA's] protections and prohibitions to circumstances involving deliberate discrimination. ... Rather, the ADA

attempts to eliminate the effects of ... benign neglect, apathy, and indifference.") (citing and quoting from

*Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995)). *(add additional pages as needed)*

2. I Have Made NuMerous Disability accomodation Requests for the abatement on 8ᵗʰ and Harrison [Decl Kewidesange]

- The qualifying Difficulties and Requests in Kewidesange's declaration are correct.

3. The city Has denied all my Requests.

- If I did not suffer from my disabilities, I would be able to get out of abatement zone, Because of Disability Related Barriers I will lose my Home.

- I just need some Help getting out of abatement zone, or an exemption- this is not a fundamental alteration to their Program.

## Irreparable Harm

4. Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages.(citation) *Boyd v. City of San Rafael*, 23-cv-04085-EMC (N.D. Cal. Oct. 19, 2023) "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F. 3d 976, 994 (9th Cir. 2017). *(Explain Irreparable harm)*

5. Losing my Home with no Alternative Shelter could literally kill me.

6. _____

7. _____

8. _____

## The Balance of Equities and Public Interest Tip Sharply In Plaintiffs Favor

1. "[p]laintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction" because the public has an interest in upholding the federal law. *Ariz. Dream Act Coal.*, 757 F.3d at 1069. (*Boyd v. City of San Rafael*, 23-cv-04085-EMC (N.D. Cal. Oct. 19, 2023)

   I Just Need to Not Lose My Home
   aND Have a Safe Place to be so I
   caN go to WoRK. I am williNg to
   fiND a comPRomise - LiFe if they
2. Moved me out of the abatement
   ZoNe a Litte bit

3. _____

1
2
3
4.
4
5
6
7
8
9
10
11 Conclusion
12
13 5. PLease DONt Let them take my HOme,
14 THey DONt Have a WaRRANT, it Puts me
15 iN gRave dangeR, it aggRavates my disabilities,
16
17 [DecL Doe, DecL Kiewide Jonge]. It could
18
19 6. meaN Life at Death to me.
20
21
22
23
24
25
26 **Verification**
27
28

Under Federal Rule of Civil Procedure 11, by signing below, I the Plaintiff in this case, certify to

the best of my knowledge, information, and belief that this complaint: (1) it is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation; (2) that I am responsible for all aspects of prosecuting this case

because I am unrepresented by an attorney and proceeding pro se, and (3) I know **I can receive**

**limited legal advice on this case from an attorney about this case by contacting the Federal**

**Pro Bono Project at the Justice and Diversity Center of the Bar Association of San**

EX-PARTE MOTION FOR TRO AND PRELIMINARY INJUNCTION - 8

1  **Francisco by contacting them at (415) 782-8982 or fedpro@sfbar.org.**

2

3

4  Signature:

5

6  Date:  3/6/26

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX-PARTE MOTION FOR TRO AND PRELIMINARY INJUNCTION  - 9

Jane Doe
2726 Martin Luther King Jr. Way Berkeley CA 94703
510-435-01152
Janedoelawsuit24@gmail.com

| | Case No. |
|---|---|
| Jane Doe | |
| | Declaration of Kenna Kiewietdejonge in support of TRO and PI |
| V | |
| City of Berkeley, Thomas Gregory | |

1. I have personal knowledge of the facts stated herein, and if called to testify, I could and would competently testify to the truth of the following.

2. My name is Kenna (Maud) Kiewietdejonge. I am an advocate with Where Do We Go and Berkeley Homeless Union which provides advocacy and material support to unhoused communities in the Bay Area. Our office is located in Berkeley California, and we serve unhoused individuals throughout the East Bay, with a particular focus on Berkeley.

3. I have worked with the unhoused community in Berkeley and the East Bay since September of 2024. During that time I have visited various encampments to support the residents generally, and specific clients. I have knowledge of the many barriers unhoused individuals face when city orders force them to move without viable alternatives where they can expect not to be noticed again immediately.

4. I have, in my capacity as an advocate, been assisting two individuals living in vehicles along the Harrison Corridor within the zone designated for abatement, with a compliance

deadline of March 9th, 2026, with accommodations requests to the City of Berkeley under the Americans with Disabilities Act.

5. As they live in vehicles, it is my understanding that the Court's TRO in the Prado case would prevent the City from towing their lived in vehicles. However, they were still very concerned about the City towing or destroying their vehicles after the expiration of that TRO and so asked me to make accommodation requests on their behalf for after the expiration of that action.

6. The responses I received from Thomas Gregory indicate the City will be towing my clients vehicles. Despite the fact that I was clear in my requests that my clients were seeking accommodations to city actions when the TRO expires, the only accommodation Mr. Gregory offered both clients was a one day extension to stay in the area through March 10, rather than March 9, the date of the closure on the notices. Because my clients live in vehicles that cannot be towed per the court's order in Prado, this accommodation does not make any sense, and has caused my client's immense and reasonable fear.

7. The efficacy of both of these processes has been severely hindered by Mr. Gregory's lack of substantive engagement with specific requests prior to issuing responses. The uniformity of the denials and Mr. Gregory's own attestation that our requests were substantively similar to BHU ones the city previously denied suggest the delays were not a matter of detailed consideration. They are thus unacceptable, as the absence of meaningful communication led me and my clients to conclude that their requests were undergoing consideration such that we would not reasonably expect and prepare for wholesale denial of the specific requests, with the exception of a one-day extension for

both. The email communications between myself and Thomas Gregory are attached in

**Exhibit A.** Personally identifiable information of Jane Doe have been redacted.

8. The mid-late afternoons March 9th issuances of extensions through March 10th despite

my having specified in two separate communications that we sought the requests

enumerated in both to be addressed as arrangements to be made after the expiry of the

TRO imply intent by the City to disregard the TRO in the case of these specific vehicles.

Because his replies indicate the soonest permissible enforcement of the abatement notice

as March 11th, this raises serious concerns about the failure of the city to issue a clear

report explaining the nature of any claims of health concerns posed by either vehicle, as

that would be the only legally justifiable reasons to disturb the vehicles before the TRO

expires. Rather than simply denying the requests but confirming that they would be

protected by the text of the TRO as written, not issuing any report which would justify an

alternate course of action, and providing one disability-related concession that presents a

direct contradiction of terms with text of the TRO leaves my clients not knowing what to

expect, and any further clarity will not be actionable at this late date.


**Jane Doe**


9. One complainant I have been assisting is called Jane Doe here, because of the severe

risks to her physical safety and employment security should court documents naming her

become public. All medical, housing, and other information pertinent to her requests and

claims have been relayed to me directly by her, and I have, in the presence of Robbie

Powelson, received explicit verbal permission at 6:43 p.m. on March 9th to communicate

these to the best of my knowledge and ability to the relevant parties. I also received her written permission to do so in an ROI form on February 19th.

10. I have been assisting a BHU member, Jane Doe, with the disability accommodations process. We filed a reasonable accommodation request with Thomas Gregory on February 24th enumerating Ms. Doe's disabilities, which include rheumatoid arthritis, celiac disease/IBD with co-occurring severe food allergies, and chronic gastritis and stomach ulcers. The initial document explained how these conditions severely limit her mobility, including her ability to stand and walk, and contribute to severe anemia and fatigue, and bathroom urgency. We explained the medical necessity for a very restricted diet, access to medications and other essentials, access to a clean bathroom, and walkable access to transbay AC transit are necessary for her to maintain quality of life. I explained that the location of her van and the infrastructure itself provide a safe place to store all of her medications and necessities, as well as a safe, private place to rest without which she is unable to effectively manage flare-ups of fatigue and pain.

11. I explained that she cannot use congregation shelter, because of the higher prevalence of transmissible disease which severely threatens her fragile health. I explained that reliable, walkable access to a clean bathroom and transbay AC transit stops are necessary for her to maintain the hygiene and punctuality needed for her to keep employment. This is necessary for her to cover her extensive medical costs. Since the date of compliance listed on the notice received February 19th was listed as February 24th, we explicitly request a confirmation of Mr. Gregory's engagement with the process and which if any items may be granted pending further discussion by 10 am on February 23rd.

12. We requested an extension of 90 days, a recognition of the van as medical equipment, and a designation by the city of a safe place to park.

13. I explained in a March 6th follow-up email that because she regularly becomes underweight for long periods of time due to flare-ups, making it dangerous for her to be exposed to the elements and without respite nightly drops in temperature. She suffers an increased risk of hypothermia because of the muscle wasting and low body fat that results from the aggravation of her conditions.

14. I sent multiple follow-up emails, some of which were to relay additional information we believed to be relevant to her need for reasonable accommodations, and others of which were to confirm the continued engagement with the interactive process. We received nothing substantive regarding the review of requests and until 2:55 p.m. on March 9th. The protective nature of an interactive process being open combined with the complete lack of substantive engagement left my client with no clarity of when she may have to start seeking serious emergency measures to comply with city orders and not find herself subject to vehicle seizure, citation, or arrest.

15. I sent follow-up correspondences to relay the client's requests regarding her anonymity in the context of any city postings pertaining to her residence (February 23rd), further details about the irreparable harm to her person that would predictably occur with the taking of her vehicle, and ways how the irreparable financial devastation of this same act would directly impede the management of her medical conditions (March 6th), which were met with silence.

16. I sent an email at 2:20 p.m., February 23rd, to confirm that the enforcement slated for the 24th wouldn't commence, because the city had said it would not, but the No Parking

signs remained. Mr. Gregory informed me at 10:26 a.m. on the 24th, hours after the first

possible enforcement actions were first scheduled, that the abatement would be

rescheduled and the signs removed. There was no further communication about the

interactive process except that it was ongoing. -

17. Mr. Gregory informed me the process was still open on March 2nd. In my March 6th

email giving further details of the harm Ms. Doe would suffer if her van were taken, I

sought a reply by noon that day, as the end of city business on a Friday with no clarity

puts her in danger. I followed up again at 6:16 a.m. on March 9th, the last day for

compliance, and received a virtually identical message saying the process remained

open. The interactive process cannot be said to be ongoing when no substantive

interaction about the nature of disability-related reinstatement is being relayed to the

advocate and their client in a timely fashion that would allow them to make alternative

emergency arrangements if denied.

18. It was not until 2:55 p.m. that he issued his response, which offered as an alternative the

one-day extension that contradicts the more lengthy protection of the TRO.

19. Less than 48 hours barely constitutes an extension, especially when we have explained

that Jane Doe works a full time job from which she must often return late. I will here

reiterate the nexus between her financial stability and ability to manage her conditions,

meaning that being forced to miss work in order to comply with such a deadline

constitutes a further medical burden.

20. I also note for the court that it is equipped with solar panels, which enables her to cook

without the risk of cross-contamination. This allows her daily use of an electric cooking

pot, which she needs as she cannot eat out and cannot tolerate most raw vegetables. She

must maintain a gluten-free diet to avoid severe organ damage, and the attendant risk of intestinal cancers. She has been denied EBT multiple times, and the restricted hours of food banks makes them inaccessible due to the variable hours of her job. Without this resource, the disability-related financial burden of her condition increases, because of the rarity and expense of prepackaged foods which are free from gluten and all other prohibited allergens.

21. Her van is medically necessary as its walls are insulated, protecting her from extreme heat and cold, as well as rain. Extreme temperatures worsen joint pain, mobility, and fatigue. Being unprotected from cold and wet conditions put anyone, but particularly an individual suffering from malnutrition, at heightened risk of hypothermia.

22. Access to a private space that is equipped with electricity enables her to keep employment, as her job demands remote work.

23. Congregate shelters also prevent access to food she can safely eat, and their limited hours of ingress and egress would prevent her from keeping her job.

24. Her regular late-night returns from her work mean additional travel in the dark to a public restroom beyond the close proximity to the Whole Foods puts her in additional danger of physical harm and worsened fatigue.

25. A vehicle without systems tanks or refrigerated storage means her current location is vital to maintain her employment. I reiterate that identifying a medically viable, legally permissible place for her to park her vehicle, either in public parking or identifying a private property where she can feasibly pay to park, will take longer than before the end of the day, today, March 10th.

26. The claim of fundamental burden does not address why her vehicle poses a unique risk to the health of those in the area or the efficacy of the cleanup efforts. Judge Chen's March 7th order stipulates that removal of vehicles is only permitted with a prior report attesting to the specific aspects of those vehicles that cause them to be a health risk, such as rodent harborage. Such is not the case for Jane Doe's van, and any issuance of such a report within the hours of Wednesday, March 10th does not constitute adequate notice of the cessation of the order's protection as it applies to her vehicle.

27. I maintain that the request for designated parking is reasonable, as it is in keeping with Judge Chen's January 13th order saying that they city must designate a minimum of three legally permissible, safe alternative sites for those encamped within the Harrison Corridor and surrounding evacuation zone

28. My March 6th email also explained the nexus between irreparable financial harm and irreparable medical harm, which Mr. Gregory refuted despite the demonstrable,  financial burden of managing multiple chronic illness, which had been made evident for him since the initial document, and an explanation of how being forced to comply with city orders within a short timeframe would directly worsen said burdens.

29. Thomas Gregory's statement that the financial burden of losing her vehicle is not a disability-related claim is simply wrong. Celiac disease, as well as all the other chronic illnesses listed, come with extenuating medical costs that the average, healthy person does not incur. The replacement of her vehicle would prevent her from accessing the medication, food, and other resources required to not severely aggravate her disability. Celiac disease imposes a significant financial burden, with sufferers spending an average

of 183% more on groceries than non-celiac buyers, and significant costs of medication and treatment.

30. Mr. Gregory ended his email with a recommendation that Jane Doe access bathroom, laundry, meal, and shower services at Dorothy Day, which we have already explained are inaccessible due to the variability in her job hours and her severe dietary restrictions. Even if these services were all accessible to residents of the nighttime shelter, we have already explained that congregation shelter is medically infeasible because of heightened risk of contracting illness in close quarters.

I swear the foregoing under penalty of perjury,


/s/ Kenna Kiewtiedejonge


March 9, 2026

EXHIBIT A

 Gmail

**Robbie .Powelson <robbiepowelson@gmail.com>**

---

## Fw: Urgent Disability accommodation for ██████ ████

2 messages

---

**Advocacy WDWG** <advocacy@wdwg.org>                 Mon, Mar 9, 2026 at 3:51 PM
To: "robbiepowelson@gmail.com" <robbiepowelson@gmail.com>

Maud Kiewietdejonge
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Sent:** Monday, March 9, 2026 2:55:29 PM
**To:** Advocacy WDWG <advocacy@wdwg.org>
**Cc:** ██████████████████         Josiah Mulitauopele
<josiahmulitauopele@gmail.c   >; Radu, Peter <pr     berkeleyca.gov>; Manager, C
<CManager@berkeleyca.gov>
**Subject:** Re: Urgent Disability accommodation for ██████ ████

Hi Maud,

Thank you for reaching out on behalf of Ms. ██████ ████████. The
determinations below, including alternatives where feasible, were made by me in
consultation with the City Manager's Office and relevant City departments and
staff.

Regarding your request for "**A minimum of 90 days extension**, individuals
residing in the designated abatement zone remain subject to relocation based on
health and safety conditions. Ms. ████████ has had notice of the need to
relocate since at least February 19, 2026, which is now more than two weeks ago.
Under the circumstances, the City must clear the area to effectively address the
ongoing leptospirosis public health concern. Rats can and often do hide in and
around vehicles near Harrison, which significantly complicates and undermines the
City's ability to safely abate the outbreak if vehicles remain in place for extended
periods.

As such, designating a specific exemption area for Ms. ████████ within the
abatement zone or allowing her or her vehicle to remain in the current location for
an extended period of time, would constitute a fundamental alteration of the City's
encampment management program. The City must address conditions at this site,
including those associated with the ongoing leptospirosis-related public health
concerns. Allowing a 90-day extension would also interfere with the City's ability to
mitigate those risks and would present a direct threat to public health and safety.

Because of these conditions, the City cannot provide a 90-day notice period.
However, as an alternative accommodation, the City will allow **Ms. ████████ to
remain through March 10, 2026**. The City cannot grant additional time without
creating the fundamental alteration or direct threat described above.

Regarding your request for **"Recognition of van as medical equipment**, reasonable accommodations under the ADA involve modifications to a public entity's policies, practices, or procedures. The City does not classify vehicles as any particular type of equipment, and therefore there is no City policy, practice, or procedure applicable to this request that could be modified through the reasonable accommodation process. Vehicle classifications are established by state and federal law, including regulatory frameworks under the California Vehicle Code, not by municipal designation. Because the City does not determine how vehicles are classified under those legal frameworks, it cannot issue a formal acknowledgment that Ms. ████████ van constitutes medical equipment. Additionally, the request does not identify a nexus between Ms. ████████ disability and any modification to a City policy, program, or procedure.

Further, exempting Ms. ████████ vehicle from the enforcement of parking rules would result in a fundamental alteration of the City's parking enforcement program. The City's enforcement of local and state provisions governing parking is designed to promote public safety, ensure access to limited on-street parking, facilitate street maintenance, and mitigate neighborhood impacts associated with long-term vehicle storage. Exempting Ms. ████████ vehicle from towing would undermine the purpose and application of these enforcement provisions and interfere with the City's ability to manage community impacts associated with unlawfully parked vehicles.

Ms. ████████ vehicle may be towed if it remains in a designated "no parking" area or if it is out of compliance with California registration requirements, including if registration has been expired for more than six months, as authorized under California Vehicle Code section 22651(o). The City cannot grant an exemption from these requirements. To the extent the request relates to the cost of bringing the vehicle into compliance, that concern is financial rather than disability-related, and therefore does not qualify as a reasonable accommodation under the ADA. The California Vehicle Code permits law enforcement to tow vehicles with registration expired for more than six months, and the City enforces these requirements consistently to ensure public safety and compliance with state law. The City also strives to exercise flexibility with unhoused community members where possible, which is reflected in the fact that some individuals have been permitted to keep unregistered vehicles parked in the City for extended periods when those vehicles did not create community impacts.

Regarding your request for **"the City to designate a specific place to park**," the City does not provide designated parking spaces to residents or visitors. Parking availability is governed by posted signage throughout the City, which identifies where vehicles may park and for how long. The City does not maintain a comprehensive map of parking signage, and creating and maintaining such a map would present an undue administrative burden, particularly because parking conditions and restrictions change frequently.

The City is sympathetic to Ms. ████████ circumstances and hopes she understands that under Title II of the ADA, a public entity may deny a requested accommodation when it would result in a fundamental alteration of its programs or impose an undue administrative burden, or where it would create a direct threat to health or safety. Those considerations are what guide the determinations above.

To the extent restroom access is a concern, the City maintains public restrooms throughout the City, and you may be able to assist Ms. ████████ in identifying nearby public facilities or other places of public accommodation, such as other grocery stores, where restrooms are available to the public.

In addition, the City contracts with Dorothy Day House, which operates a drop-in center that provides services including meals, showers, laundry, free clothing, lockers, mail services, internet access, respite, housing support, DMV and ID

assistance, workforce training, and medical and addiction referrals to partner social service agencies. These services may be helpful resources for Ms. ██████████
https://www.dorothydayhouse.org/services

This message constitutes the City's final determination regarding the accommodation requests submitted on Ms. ██████████ behalf, and this determination is based upon the reasons described above, and due to the fact that the requests are not supported by sufficient information showing the disability-related need for the requested accommodation, and because the requested accommodation would impede actions necessary to protect public health. If Ms. ██████████ disagrees with this determination, she may choose to file a grievance through the City's ADA grievance procedure:
https://berkeleyca.gov/sites/default/files/documents/ADA%20Grievance%20Procedure%20and%20Form%20-%20updated%20Feb2024%20-%20WCAG-compliant.pdf.


Best,


**Thomas Gregory / ADA Program Coordinator**
City of Berkeley, Public Works Department
1947 Center Street, 5th Floor
Berkeley, CA 94704

(510) 981-6418

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 9, 2026 7:36 AM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Cc:** ████████████ <████████████ Josiah Mulitauopele <josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ██ ████

Received. Thank you!

-Maud

---

**From:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Sent:** Monday, March 9, 2026 7:34:44 AM
**To:** Advocacy WDWG <advocacy@wdwg.org>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Cc:** ████████████ <████████████ Josiah Mulitauopele <josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ██ ████

Hi Maud,

I'm confirming that the interactive process re Ms. ██████████ requests remains ongoing.  I will follow up as soon as possible regarding the requests you have submitted on Ms. ██████████ behalf.

Best,

**Thomas Gregory / ADA Program Coordinator**
City of Berkeley, Public Works Department
1947 Center Street, 5th Floor
Berkeley, CA 94704

(510) 981-6418

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 9, 2026 6:16 AM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Cc:** ██████████████ <████████████████ Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████ ████████

I apologize for the redundancy of the above email, as I have learned that Judge Chen granted a prevention of seizure of vehicles of those living within the Harrison corridor. However, we would like to ensure the interactive process regarding accommodations remains open. The temporary nature of a TRO means that Ms. ████████ upon the expiry of the restraining order against the city, will need to have protections in place for her vehicle in order to not aggravate her disabilities.

Thank you very much and good morning,

**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Friday, March 6, 2026 6:23:58 PM
**To:** Gregory, Thomas <tgregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <cmanager@berkeleyca.gov>
**Cc:** ██████████████ <████████████████ Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████ ████████

Good evening,

Since the encampment closure is imminent and new parking signs were posted this morning, we are looking for a response.

Thank you.

**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Friday, March 6, 2026 10:51:56 AM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Cc:** ██████████████ <████████████████ Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████ ████████

Hello,

We must receive a response detailing which accommodations will be granted before 12 p.m., today, March 6th, 2026. With the abatement slated for Monday, the standing lack of clarity is unacceptable and leaves Ms. ████████ in danger of incurring state-created irreparable harm, in the form of losing vital resources, and as a consequence, severe damage to her person.

Her van is where she stores all of her medication and medical equipment. She will, without access and safe storage for her medication, and a place where she can safely rest, incur significant damage to multiple internal organs, including but not limited to stomach and intestines. The loss of medications also constitutes irreparable financial harm, as the replacement of her prescriptions would be extremely cost prohibitive. This would prevent her from accessing other vital resources, like food that she can safely consume without aggravating her disabilities. Celiac disease, if continually triggered, can result in permanent, irreversible intestinal damage. Being put in circumstances where she cannot manage this condition and adhere to a diet free of cross contamination from gluten and other allergens would put her elevated risk of intestinal cancers.

Experiencing the nighttime cold while still recovering from muscle deterioration from recent flares puts her at elevated risk for the dangers of exposure and hypothermia, if she is not sheltered in her enclosed space with the necessary resources.

Thank you for your swift response,


**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Sent:** Monday, March 2, 2026 2:47:37 PM
**To:** Advocacy WDWG <advocacy@wdwg.org>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Cc:** ████████████████ <████████████████ Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ███ ████████

Hi Maud,

Yes, the interactive process is still ongoing. As I wrote below in this thread, I will follow up as soon as possible regarding the requests you submitted on Ms. ████████ behalf.

Best,

**Thomas Gregory / ADA Program Coordinator**
City of Berkeley, Public Works Department
1947 Center Street, 5th Floor
Berkeley, CA 94704

(510) 981-6418

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 2, 2026 2:41 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C

<CManager@berkeleyca.gov>
**Cc:** ███████████  <███████████  Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████ ████

Good afternoon,

I understand that you clarified about the removal of the no-parking signs because we
specifically mentioned. However, I wanted to confirm that the interactive process is still open,
despite the temporary absence of notices. Ms. ██████████ disability still needs to be
accommodated, and I see no reason why the process should not remain active, as the
constraints posed by her disability remain in the interim. We have been told to expect notices,
prior to the impending sweep. So, in the context of the larger, ongoing negotiation to meet her
needs, the removal of the notices citing February 24th for the removal is moot.

We look forward to hearing from you soon.

Thank you,


**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Sent:** Tuesday, February 24, 2026 10:26:33 AM
**To:** Advocacy WDWG <advocacy@wdwg.org>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C
<CManager@berkeleyca.gov>
**Cc:** ███████████  <███████████  Josiah Mulitauopele
<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████ ████

Hi Maud,

The abatement proposed by the attached notice will not move forward. As a result, the no-
parking signs that were posted to be effective 2/24/26 will not be enforced. The abatement will
be rescheduled for a future date. I will follow up as soon as possible regarding the requests you
submitted on Ms. ██████████ behalf.

Best,

**Thomas Gregory / ADA Program Coordinator**
City of Berkeley, Public Works Department
1947 Center Street, 5th Floor
Berkeley, CA 94704

(510) 981-6418

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, February 23, 2026 2:20 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C
<CManager@berkeleyca.gov>
**Cc:** ███████████  <███████████  Josiah Mulitauopele

3/10/26, 7:31 AM                                                    Gmail - Fw: Urgent accommodation for ███ ███

<josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████   ████

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

Hello,

We are circling back to this request. We are concerned, because the No Parking signs remain next to Ms. ████████ van, and we do not yet know if accommodations may be granted for the enforcement originally slated as starting tomorrow.

We ask for assurance,::/ before the end of today's City business day, Monday, February 23rd, that enforcement will be paused until we have fully completed the interactive process.

Thank you very much,

-Maud

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, February 23, 2026 9:33:11 AM
**To:** Gregory, Thomas <tgregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <cmanager@berkeleyca.gov>
**Cc:** ████████████ <████████████████ Josiah Mulitauopele <josiahmulitauopele@gmail.com>
**Subject:** Re: Urgent Disability accommodation for ████   ████████

I am also sending this follow-up to say that, in light of the unexpected specification of legal names on the general February 17th notices, Ms. ████████ also seeks confirmation that documentation of her accommodations which occurs outside this email thread not contain any portion of her name, for safety reasons.

I am unaware if there is standing policy prohibiting the use of people's names on individual city notices. If there is not, we explicitly request any printed document specifying her accommodations use only her vehicle ID information, as creating widespread knowledge of her location would jeopardize Ms. ████████ safety as a single female.

We look forward to working with you upon reply,

Respectfully,

**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Saturday, February 21, 2026 12:04:41 PM
**To:** Gregory, Thomas <tgregory@berkeleyca.gov>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <cmanager@berkeleyca.gov>
**Cc:** ████████████ <████████████████ Josiah Mulitauopele <josiahmulitauopele@gmail.com>
**Subject:** Urgent Disability accommodation for ████   ████

Full name: ██████   ████████

Phone number: (510)-435-0152
Email: ███████████████
Location of dwelling: Near 930 Harrison Street, Berkeley
Type of dwelling: Light blue Chevrolet Sport Van with an Oregon plate 202JYV

Disability accommodation for: Encampment abatement of Eighth and Harrison Streets

I am seeking to open an interactive accommodations process on behalf of Ms. █████
████████ as required of the City of Berkeley by the Americans with Disabilities Act (ADA).
Ms. ████████ received a notice on the 19th saying she is required to move her van, her only
dwelling, from Harrison Street by the 24th. This gives her less than a week to relocate.

████████ suffers from multiple documented chronic illnesses that severely impact her immune
system function, and therefore overall mobility, strength, and daily needs. She lives with and
must manage the following conditions:

- Rheumatoid arthritis
- Celiac disease/IBD
- Co-occurring severe food allergies, which can result in anaphylaxis.
- Chronic gastritis and stomach ulcers
- History of reproductive tumors, with one currently active

The combination of these conditions pose significant limitations to her mobility.
Her conditions hinder her in walking, standing for long periods, and lifting heavy objects. She is
chronically anemic because of her digestive disorders. This causes severe fatigue, results in
periods of extreme weight loss and attendant muscle wasting, from which it takes six months
minimum to recover. This makes operating a vehicle and making viable arrangements to move
impossible within the given timeframe.

As a result of her celiac disease and other illnesses, she deals with bathroom urgency on a
regular basis and must have immediate easy access to a private, sanitary bathroom at all times,
which she currently finds at the nearby Whole Foods.
Her vehicle is a van, not an RV, so it doesn't have a built-in bathroom. She must be able to
relocate somewhere where she can meet this basic need. Immediate bathroom access allows
her to maintain proper hygiene, which is essential to to maintain her health and keep her job.

Her maintenance of these medical conditions is time-intensive, as she must manage the refills
of multiple medications, and go through longer periods of rest, both to avoid aggravating
symptoms and to manage active flare-ups. She requires help moving from friends/support
people, at a time when chronic pain is not too prohibitive.

Congregate shelters are medically contraindicated. The variability of other shelter inhabitants'
health and heightened risk for communicable diseases mean her vehicle is her only option for a
safe dwelling. Removing it would deprive her of her only shelter, and of life-saving medical
care.  The van is the only safe place for her to store all of the medications needed to manage
her multiple chronic illnesses. All of her medications and other necessary supplies are delivered
to Whole Foods. Proximity to a place where her medications get delivered is non-negotiable.
She also must have a nearby point of access to food which can accommodate the medically
necessary diet modifications for celiac.

Ms. ████████ needs immediate easy access to public transport. She works in San Francisco,
for which there are a more limited number of transit stops than intra-East Bay. Being within a
very short walking distance of a stop is crucial for her to keep her job, which supports
thousands of dollars worth of monthly medical costs. Public transit access is also essential
because she often must go to the emergency room for needs related to her illnesses, and the
amount of ambulance rides would put her in severe medical debt.

Her work hours are variable, and she frequently has to return to her dwelling late at night. Her
current location is the place that she feels safest doing so. Areas directly outside of the posted

hazard zone are not sufficiently lit as to be safe, nor do they have public transit stops which she could access without having to exert herself so much that it aggravates her disabilities.

We require confirmation of whether the City is engaging with the interactive process, and **will urgently need specific confirmation of whether the following accommodations will be granted, or, if applicable, which items need to be further discussed, by Monday, February 23rd, at 10am.**

The accommodations needed are as follows:

**A minimum of 90 days extension**, to make arrangements to move her vehicle to a safe location where her medical needs can be met.
**Recognition of van as medical equipment**, which cannot be destroyed, seized, and discarded during any enforcement action. This clean, private place to rest and store medication is indispensable.

**For the City to designate a specific place to park**, which is more than 12x21 feet, and for which there would be an exemption from time-limited parking enforcement. Moving her vehicle every 72 hours would severely aggravate her disabilities. This designation can take the form of a simple and legible visual map, diagram, or a written list, showing or specifying where she may legally relocate within the city. Possession of a visual aid will allow her to communicate the accommodations to city enforcement entities as necessary.

She has been treated by Lifelong Medical, 837 Addison St, Berkeley CA 94710 (510)-981-4100.

However, she has received her most recent and most frequent medical care at Highland Hospital. She has paperwork from her most recent ER visit to substantiate her conditions, and Olivia deBree, Nurse Practitioner with Lifelong Medical, can verify her medical conditions if needed. She can provide other medical records if afforded sufficient time to go through the request process.
Ms. ██████ is ready and willing to engage with the interactive process and we look forward to working collaboratively to ensure her disability-related needs are met.

Respectfully,

Maud Kiewietdejonge
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**Advocacy WDWG** <advocacy@wdwg.org>                                    Tue, Mar 10, 2026 at 2:03 AM
To: "robbiepowelson@gmail.com" <robbiepowelson@gmail.com>

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 9, 2026 6:06:35 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Cc:** ██ < ██████ >; Josiah Mulitauopele <josiahmulitauopele@gmail.com>; ██████; Radu, Peter <pr ██████ berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Subject:** Re: Urgent Disability accommodation for ██ ██

We would affirmatively argue that Ms. ██████ poses no immediate danger, as she has no holding tanks of any kind; the footprint of her living space is completely confined to the

footprint of the van itself; she has never kept any personal items or trays directly outside. She is parked next to the curb such that she is not obstructing traffic or a driveway.

An individual who was dumping trash used to live directly in front of Ms. ███████ residence but has since moved, so the issue there has abated. Ms. ███████ testifies that Okea Vance-Dozier came to inspect based on a report about her previous neighbor's dumped trash, and Ms. Vance-Dozier determined that Ms. ███████ was not responsible. Ms. ███████ vehicle has no openings that would be rat harborage and the van does not have a rat problem.

**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 9, 2026 5:58:16 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Cc:** ██████████ <███████ <josiahmulitauopele@gmail.com>; Radu, Peter <pr████berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Subject:** Re: Urgent Disability accommodation for ████ ████████

We would also like to note that Ms. ███████ was allowed safe parking on the lot for the property at 1240 Eighth Street until July of 2025. This was permitted by the property caretaker and property manager from approximately two years ago until July 2025, when the City of Berkeley took over the property to begin construction for the new fire department center, and did not offer any alternatives for shelter or safe parking to Ms. ███████

**Maud Kiewietdejonge**
Advocate
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, California 94703-2146
Tel: 510-999-WDWG (9394)
www.wdwg.org

---

**From:** Advocacy WDWG <advocacy@wdwg.org>
**Sent:** Monday, March 9, 2026 5:51:17 PM
**To:** Gregory, Thomas <TGregory@berkeleyca.gov>
**Cc:** ██████████ <███████ <josiahmulitauopele@gmail.com>; Radu, Peter <pradu@berkeleyca.gov>; Manager, C <CManager@berkeleyca.gov>
**Subject:** Re: Urgent Disability accommodation for ████ ████████

Ms. ███████ asked me to convey to you that she intends to file an ex-parte motion for TRO tomorrow morning, March 10th, and she makes this request because her disabilities make it impossible to move within the limited time granted by the extension. The interactive process remained open with minimal substantive communication since the filing means that she did not substantively have two weeks in which to move, because of the continued expectation that there would be negotiation surrounding her disability-related needs.

As such, we would like to point out that Judge Chen, during the Prado v. City of Berkeley hearing on March 7th, indicated that city assistance with moving vehicles with mechanical issues to a safe spot would be a reasonable accommodation. We request this type of assistance, provided that the timing is clearly communicated beforehand such that Ms.

██████ is able to be present for the duration of the tow so as to get resettled in the new location and ensure all disability-related needs are properly communicated.

We also will point out the assertion that financial burden is not a disability-related claim is spurious, because management of her conditions inherently comes with disability-related costs. The costs of prescriptions, equipment, and food needed to not severely aggravate her disabilities fall far beyond the bounds of normal costs of living and therefore present a disability-related claim of state-created danger were her vehicle to be towed.

[Quoted text hidden]

1   Your Name: _Jane Doe_
2   Your Address: _2726 Martin Luther King Jr. Way, Berkeley CA 94702_
3   Phone Number: _510-435-0152_
4   Email Address: ▓▓▓▓▓▓  _janedoelawsuit24@gmail.com_
        _J.D._
5   Pro Se

6

7                      **UNITED STATES DISTRICT COURT**

8                      **NORTHERN DISTRICT OF CALIFORNIA**

9       Division [check one]:  ☐ San Francisco  ☐ Oakland  ☐ San Jose  ☐ Eureka-McKinleyville

10

11      _____Jane Doe_____          Case Number _____

12              Plaintiff,            **DECLARATION OF** _JANE DOE_
                                      [Name of Person Signing]
13
          v.                          **IN SUPPORT OF** _TRO & PI_
14      _Thomas Gregory_              [Motion/Opposition Title]
        _City of Berkeley_
15      _____Defendant._____        Judge: Hon. _____

16

17   [In the first paragraph, explain who you are. If you are the Plaintiff or Defendant, say so here. If
     you are a witness, say how you are involved and connected to the party or events in this case.]

18   1.  I am _the plaintiff Jane Doe. The City of Berkeley intends to_
19       _tow my home, which I have no way to move, on Monday_
20       _from 8th & Harrison. They have not offered any viable solution to protecting_
         _personal property while monitoring, employment._
21   2.  I have personal knowledge of all facts stated in this declaration, and if called to testify, I could
22       and would testify competently thereto.

23   [Write each fact in a separate paragraph. You may only write about facts or occurrences that you
     have personal knowledge, such as events you personally saw happen. Explain how you know each
24   fact. View instructions to submit documents that support your argument.]

25   3.  _I have directed representatives of Where Do We Go & Berkeley Homeless Union_
26       _to request disability accommodations, which have not been granted. The_
27       _last email indicated just the city would tow on March 11th. I'm a single_
28       _woman with need for a van to avoid immediate danger to my person,_
         _and to keep my employment._

DECLARATION OF _____        PAGE ___ OF ___        JDC TEMPLATE, UPDATED 11/2024

4. I made my requests with the city based on my location at Eighth and Harrison, based on necessity to have easy, walkable access to public restrooms, transbay public transportation, potable water, & medically necessary foods & necessities. the My dwelling is necessary to protect myself as a single female who is unhoused, and rely on support of neighbors to keep safe. I have experienced a previous incident where my vehicles the presence of those neighbors protected me from physical harm.

5. ATTAChed iN ExHibit A aRe Pictures of MY Home taken ON March 9, 2026

6.

7. 3/6/26      Jane Doe
Jane Doe
Sworn under penalty of perjury

EXHiBiT    A



EXHIBIT A



**PROOF OF SERVICE**

I, **Kenna Kiewtiedejonge**, declare:

I am a resident of the United States and over the age of eighteen years. I am not a party to the within action. My business address is Berkeley, California.

On **March 10, 2026**, I served the following document(s):

**Jane Doe v. City of Berkeley**, Complaint, Ex-Parte Motion for TRO, Declaration Of Jane Doe, Declaration of Kenna Kiewitedejonge,

on the following counsel of record by **electronic mail**:

**Nubyaan Scott**

City Attorney's Office

City of Berkeley

Email: **<NScott@berkeleyca.gov>**

I caused a true and correct copy of the document(s) to be transmitted via electronic mail to the email address listed above. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on **March 9, 2026**, at Berkeley, California.